JURKIEWICZ v. AMERICAN CAR & FOUNDRY CO.

1. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—FELLOW-SERVANTS.

   Where the employé of a car manufacturer was killed while passing between cars which he knew were liable to be moved at any time, and it is claimed that the brakeman employed to give warning of the movement was not at his post, and that if the proper warning had been given and heeded the injury would not have occurred, the negligence was either that of decedent or that of a fellow-servant, for neither of which the master was liable.[1]

2. SAME—SAFE PLACE TO WORK—DUTY OF MASTER—FELLOW-SERVANTS.

   Though there is a duty on the part of the master to provide a safe place, machinery, and appliances, the duty does not

[1] As to who are fellow-servants, apart from statute, where there is no question of vice principalship, see note to *Sofield* v. *Guggenheim Smelting Co.* (N. J.), 50 L. R. A. 417.

extend so far as to require that he shall see at his peril that such machinery and appliances are properly used; reasonable regulations must be made for their use, but when this is done, and the fault of one servant makes a place unsafe, which, but for such fault, would be safe, the rule of nonliability for the fault of a fellow-servant applies.

Error to Wayne; Frazer, J. Submitted January 22, 1907. (Docket No. 71.) Decided March 26, 1907.

Case by Victor Jurkiewicz, administrator of the estate of Alexander Jurkiewicz, deceased, against the American Car & Foundry Company for the negligent killing of plaintiff's intestate. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Washington I. Robinson,* for appellant.

*Angell, Boynton, McMillan & Bodman,* for appellee.

MONTGOMERY, J. This action was instituted by the administrator of the estate of Alexander Jurkiewicz under the death act. Decedent met his death while in defendant's employ through what is claimed to be actionable negligence of the defendant. The circuit judge directed a verdict for defendant. Plaintiff brings error.

The decedent, who was 22 years of age, commenced work for defendant as a painter on the 7th day of October, 1902, and received the injuries from which he died two days later. The defendant's plant is an extensive one, employing from 4,000 to 5,000 men, and covering a considerable area of ground, upon which are located a number of different large buildings and shops, among which is one building known as the "erecting shop." There are 16 tracks altogether in the erecting shop. The steel bottoms of the cars are brought from the steel plant, where they are put together, and then sent over to the erecting shop to get the woodwork on them. The de-

fendant company employs two engines for said work; the crew for each engine consisting of an engineer and two switchmen. One Joseph Roseman was employed as yardmaster in the defendant's yard, and had full charge of the men on the engines, and the direction of their work in switching the cars in and out of the different shops. This yardmaster had nothing to do with hiring and discharging the painters, as they worked under another man. The deceased was injured on what is known as "track 11" in the erecting shop, at about the hour of 10 o'clock on the morning of October 9, 1902. He was employed painting upon cars in defendant's premises, a distance from the paint shop, and at the time of the accident was going from the place where he had been painting to the paint shop for the purpose of getting more paint, and had his paint pail in his hand. In going to the paint shop he was obliged to cross certain railroad tracks upon the premises, and more especially track 11 in the erecting shop, which tracks it appears were filled with cars, and that about four feet inside the erecting shop there was a space of about two feet left open between the cars for employés to get through. The evidence shows that when switching was not going on an open space between cars was left outside the erecting shop to admit of employés passing across the track. The defendant's testimony tended to show that this space was always open except when switching was going on. The plaintiff's witnesses testified that he had seen this space closed a couple of times when crews were not engaged in switching.

The case made by plaintiff's testimony can be best understood by quoting from the testimony given by the one witness who gave testimony on his behalf as to the main facts. Frank Sieleski, a fellow employé, testified as follows:

"I was going to the pump at lunch time to take a drink, and there was a space opening between the cars— opening two feet or so; and I got between the cars, and he got between the cars, and I looked both ways, and I

didn't see any engine there at all, and I never expected to see any cars moving there.   Somebody was supposed to be right there every time.   When I was going through, at the same time he was coming through, too, and I looked up both ways, and there was no engines at all, and nobody standing up there.   I thought we might as well go right through.   He had a pail of paint, and I didn't want to get slobbed up with paint, and I says, 'Go right through first,' and he said, 'All right,' and he looked towards that way, and towards that way [illustrating], and he could not see anything, and never saw anything, and could see no engine, and all at once he got squeezed in the cars.   *   *·   *

"There was no different place to go through.   There was a space supposed to be open, and somebody was always supposed to be there.   Before that, the brakeman always came right at the end and stopped a person going through; but at the same time then there was nobody in there, and you could not see in.   I was supposed to look if there was anything there, and I ran to get through first, and that fellow was coming, and he got through himself. *   *   *

" *Q.* Did you look to see if there was anybody else there?

" *A.* Yes, sir.

" *Q.* Why?

" *A.* To see if there was anybody there to keep a fellow from going through there.

" *Q.* Was there ordinarily a brakeman ahead?

" *A.* There was no one around.

" *Q.* But generally, other times, there was a brakeman there ahead?

" *A.* Yes, sir, always coming ahead."

And on cross-examination, in describing the circumstances of the injury, he testified as follows:

" I told him there was no brakeman because he was going slow there.   A brakeman should be there to take care of the cars.   A brakeman should be there when they are switching them.   I did not know they were switching those cars.   I looked because they had to be on the end there.   A brakeman is supposed to be on the end when they are switching.   He does not have to be on the end all day long.   I looked for a brakeman, because I

thought they were switching those cars, and there would be a brakeman there. Jurkiewicz said, ' All right' before he was hit. He looked for a brakeman himself. He looked for a brakeman to see if there was a brakeman waving for him to get out of there. I knew there was no brakeman. I did not know they were switching them cars. Because I do not see no engine there I was looking for a brakeman. Because, if there was a brakeman, I would not get through."

The plaintiff's counsel contends that defendant failed to perform the duty which it owed to decedent to provide a safe place to work, and to travel upon its premises in the performance of his work; to guard and protect the opening or passage left between cars when employés were required to cross; and to warn decedent of the dangers with which he was confronted. The danger of passing between cars which might be expected to be moved was as obvious to decedent at a glance as it would have been with the fullest explanation. It is made to appear that decedent knew that these cars were liable to be moved under some circumstances, for it is in testimony that he was looking out for a brakeman to give warning. The defendant's testimony tended to show that warning was in fact given. This was, however, a controverted fact. The important fact is that decedent knew enough of the custom to expect a warning, and knew that this was the provision made by defendant for his protection. The place was therefore safe enough if properly used by decedent and defendant's other servants. If the proper warning had been given and heeded the injury to decedent could not have occurred. The negligence was either that of decedent himself or that of a fellow-servant. The duty of providing a safe place, machinery, and appliances, is recognized; but the duty of the master does not extend so far as to require that he shall see at his peril that such machinery and appliances are properly used. Reasonable regulations must be made for their use; but when this is done, and the fault of one servant makes a place unsafe, which, but for such fault, would be safe,

the rule of nonliability for the fault of a fellow-servant applies. *Frazee* v. *Stott*, 120 Mich. 624, and cases cited. The direction was proper.

Judgment affirmed.

CARPENTER, BLAIR, OSTRANDER, and MOORE, JJ., concurred.